IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **FRANKLIN JEFFERSON STOGNER,** }<br>}<br>   **Plaintiff,**  }<br>}<br>v.  }<br>}<br>**MICHAEL J. ASTRUE,** }<br>**Commissioner of** }<br>**Social Security,** }<br>}<br>   **Defendant.** } | Civil Action No.: 5:12-cv-01848-RDP |

### MEMORANDUM OF DECISION

Franklin Jefferson Stogner ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under the Act. 42 U.S.C. §§ 405(g), 1383(c). Based upon the courts review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

This action arises from Plaintiff's applications for a period of disability, Title II DIB, and Title XVI SSI, filed December 22, 2009, alleging disability beginning on August 22, 2009. (Tr. 172-82). Plaintiff's applications were initially denied by the Social Security Administration on February 18, 2010. (Tr. 146, 148). On February 23, 2010, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 165). Plaintiff's request was granted and a hearing was held on April 20, 2011. (Tr. 51, 128-45). In his decision, dated July 5, 2011, the ALJ

determined Plaintiff had not been under a disability within the meaning of § 1614(a)(3)(c) of the Act since August 22, 2009. (Tr. 29-41). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff was fifty years old at the time of the hearing. (Tr. 132). Plaintiff alleges he has been disabled since August 22, 2009, suffering from a heart attack, arthritis, asthma, and high cholesterol. (Tr. 155, 172, 179, 199). Before his alleged period of disability, Plaintiff worked various jobs, including stints as a carpenter and construction worker. (Tr. 201, 228-35).

Plaintiff's medical records prior to his alleged period of disability are mostly unremarkable concerning his impairments. Plaintiff's only visit to the emergency room was on May 4, 2008, when he complained of shoulder pain and difficulty breathing. (Tr. 248-61). While Plaintiff was prescribed an inhaler, x-rays revealed Plaintiff's "heart size and pulmonary vascularity are within normal limits. Peripheral lung fields are well expanded and clear." (Tr. 252, 256). During his alleged period of disability, Plaintiff received treatment from Huntsville Hospital and The Heart Center. (Tr. 262-306). First, Plaintiff was admitted as an inpatient at Huntsville Hospital on August 23, 2009, complaining of severe chest pain. (Tr. 262-93). Dictating physician Michael L. Ridner noted Plaintiff smoked one and a half to two packs of cigarettes per day but denied symptoms of asthma. (Tr. 265). Dr. Ridner stated Plaintiff's diagnosis consisted of "[a]cute myocardial infarction. Coronary artery disease with percutaneous angioplasty and stenting of the left circumflex artery. Dyslipidemia. Tobacco Abuse." (Tr. 263). Plaintiff underwent a successful cardiac catheterization, and Dr. Ridner noted Plaintiff's recuperation from the surgery was "uneventful." (*Id.*). Plaintiff was discharged on August 25,

2009 after receiving several medications for his condition and was told to follow up with Dr. Ridner in six weeks for an exercise stress test. (*Id.*).

Plaintiff was next seen on November 3, 2009 at The Heart Center, complaining of a knot in his groin at the site of his catheter. (Tr. 293-301). An ultrasound revealed the "mass in [Plaintiff's] groin is due to several enlarged lymph nodes." (Tr. 294). Dr. Ridner noted Plaintiff has "done well and reports no angina or dyspnea" since his surgery, he "denies chest pain or discomfort, racing/skipping heart beats, dizziness, passing out, swelling of hands or feet, and weight gain," and his heart showed "regular rate and rhythm, physiologic $S_1$, $S_2$ without murmurs, rubs, gallops, or clicks." (Tr. 294, 297-98). Plaintiff was seen again for his enlarged lymph nodes on November 23, 2009 at Huntsville Hospital. (Tr. 302-306). The visit was unremarkable as related to Plaintiff's alleged disability claim and suggested no additional complications. Plaintiff's medical record reveals no further visits to physicians for treatment.

Finally, Plaintiff underwent a Physical RFC Assessment on February 18, 2010 performed by Simon Scott, the Single Decisionmaker ("SDM") for this claim. (Tr. 150-57). The SDM stated that based on his review of Plaintiff's medical record, Plaintiff has the RFC to occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and walk about six hours in an eight-hour workday, sit for a total of about six hours, push and pull unlimited other than as shown for lift and carry, occasionally climb, never balance, and frequently stoop, kneel, crouch, and crawl. (Tr. 151-52). In assessing whether the severity of Plaintiff's symptoms were consistent with the medical evidence on record, Mr. Scott noted "[a medically determinable impairment] does exist that could reasonably be expected to produce his stated symptom/funtional [sic] limitations. Statements are found to be partially credible." (Tr. 155).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant

4

is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

Here, the ALJ determined that Plaintiff: (1) did not engage in substantial gainful activity since the onset of his alleged disability; (2) does have medically determinable impairments—namely, status post myocardial infarction and coronary artery disease—that more than minimally affect his ability to perform work-related activities; but that (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 34-35).

According to the ALJ, Plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of his symptoms are inconsistent with the objective medical evidence on record and with Plaintiff's own statements. (Tr. 35-38). The ALJ analyzed six factors in making his determination, noting specifically that Plaintiff did not seek any additional treatment for his impairments and did not have record of any ongoing medications. (Tr. 37-38). Further, the ALJ noted Plaintiff's Function Report from February 2010 revealed he was able to perform chores throughout the week, shop at various stores, and walk outside with some breaks. (Tr. 37). Plaintiff testified that during his period of alleged disability, he drove himself to Texas for a vacation to see his family. (*Id.*).

After consideration of the medical evidence on record, the ALJ found that Plaintiff retains the RFC to perform a reduced range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and has the following limitations: he can "lift, carry, push, or pull twenty pounds

Case 5:12-cv-01848-RDP   Document 11   Filed 07/22/13   Page 6 of 16

occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday . . . never climb ladder/rope/scaffolds; occasionally climb ramp/stairs; frequently balance, stoop, kneel, crouch, and crawl; and avoid concentrated exposure to temperature extremes and hazards." (Tr. 35).

In determining whether Plaintiff could perform a significant number of jobs in the national economy despite his limitations, the ALJ posed several hypothetical questions to the vocational expert ("VE") who was present at the hearing. (Tr. 140-44). In response to the above mentioned limitations, the VE testified that while Plaintiff would be unable to perform his past relevant work, he would be able to perform a significant number of jobs in the national economy. (Tr. 141-43). The VE stated that she "did not find any transferability of skills to the light level," but listed three examples of unskilled light range jobs that Plaintiff could work: an assembler, an inspector, and a sorter. (Tr. 142-43).

The ALJ concluded that Plaintiff is unable to perform his past relevant work and his ability to perform all or substantially all of the requirements of the full range of light work is impeded by additional limitations. (Tr. 35). However, consistent with the VE's testimony, the ALJ determined Plaintiff can perform a significant number of jobs in the national economy despite the above-mentioned limitations. (Tr. 39-40). Thus, the ALJ ruled Plaintiff is not disabled as that term is defined in the Act and therefore, is not entitled to a period of disability. (Tr. 41).

### III.    Plaintiff's Argument for Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, vacated and reversed, or in the alternative, remanded for further consideration. (Pl.'s Mem. 11). Plaintiff makes three

6

specific arguments: (1) The ALJ erred in relying on the state agency's opinion (Pl.'s Mem 6-8); (2) the ALJ erred in failing to develop the record by not ordering an additional consultative examination (Pl.'s Mem. 8-10); and (3) Plaintiff's RFC "would better comport with a sedentary RFC at best." (Pl.'s Mem. 10).

## IV. Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.     Discussion**

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

**a.     The ALJ Did Not Err in His Determination by Considering the State Agency's Opinion.**

After meticulously parceling through Plaintiff's brief, the court finds Plaintiff has actually alleged two separate arguments in his first heading.[1] First, Plaintiff contends that the ALJ simply and improperly adopted the State Agency's opinions for his own in his RFC determination. (Pl.'s Mem. 6). Second, he argues that because the State Agency's RFC was "produced by a non M.D. disability specialist . . . whose opinion is not entitled to deference under SSR 96-6 or even as an acceptable medical source," and was not certified by a medical consultant, the ALJ's RFC determination was not based on substantial evidence. (Pl.'s Mem. 6-7).

With respect to Plaintiff's first argument, the ALJ stated explicitly that while he considered the opinion of the State Agency SDM, he found independently the facts necessary to make his RFC determination. (Tr. 34). Further, the ALJ expounded upon his decision by outlining the medical evidence and testimony on record he used to make his separate determination. (Tr. 34-38). While Plaintiff might have a valid argument if the ALJ had "adopted" the SDM's RFC finding and the medical records contained highly contradictory evidence of Plaintiff's disability, that is not the case here. The record contains no evidence of Plaintiff's alleged disability of asthma, arthritis, or cholesterol. In fact, two entries state

---

[1] Plaintiff also appears to present (at the end of his first argument) an additional assertion that the ALJ should have requested a consultative examination as the record contains no additional evidence of disability after November 2009. (Pl.'s Mem. 7). The court will address this argument under the second heading regarding the ALJ's duty to develop the record.

8

explicitly that Plaintiff was not suffering from asthma. (Tr. 270, 282). Further, after Plaintiff's cardiac catheterization on August 24, 2009, all subsequent reports indicate a successful recovery and no relevant residual symptoms.[2] (Tr. 262-306). The ALJ also incorporated ample evidence from Plaintiff's Function Report and from testimony at the ALJ hearing regarding Plaintiff's daily activities. (Tr. 133-40, 220-27).

Nevertheless, Plaintiff points to no legal authority supporting his proposition. The Regulations explicitly allow the ALJ to rely on evidence other than strictly medical records. *See* 20 C.F.R. §§ 404.1512(b)(4), 404.1513(d), 404.1520(a)(3), 404.1545(a)(3). The Regulations also state the ALJ "may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work. Other sources include . . . [p]ublic and private social welfare agency personnel." 20 C.F.R. § 404.1513(d). The ALJ gave appropriate weight to the SDM's opinion by not relying exclusively on it but instead determining whether objective and subjective evidence of record supports his finding. (Tr. 34-38). When the ALJ's determination is supported by substantial evidence, the case law and regulations do not prevent the ALJ from reaching the same conclusion made by the SDM.

Second, Plaintiff's argument that the determination made by the SDM must be supported by a medical consultant is off the mark. Under the Regulations, a non-M.D. disability specialist, like the SDM in the instant case, is not an acceptable medical source. *See* 20 C.F.R. § 404.1513. Further, in many other jurisdictions, a disability examiner is allowed to make a disability determination without a medical consultant only when no medical evidence of record exists. *See* 20 C.F.R. § 404.1615(c)(2). Because the record contains some medical evidence of Plaintiff's

---

[2] Plaintiff did return to the hospital twice after the catheterization for treatment of enlarged lymph nodes at the site of his catheter. (Tr. 294-306). This complication, however, is not related to his allegations of disability.

alleged disability, Plaintiff's argument that the SDM cannot render a determination without a medical consultant appears, at first blush, facially correct. But that is not the whole story here.

The Social Security Administration reserves the right to test modifications of its disability determination process and publishes a notice in the Federal Register that "describes which model or combinations of models we intend to test, where the specific test site(s) will be, and the duration of the test(s)." *See* 20 C.F.R. § 404.906(a). Under the Single Decisionmaker Model modification, "[t]he decisionmaker will make the disability determination and may also determine whether the other considerations for entitlement to benefits based on disability are met. . . . The medical or psychological consultant will *not* be required to sign the disability determination forms [ ] to have the State agency certify the determination of disability." 20 C.F.R. § 404.906(b)(2) (emphasis added). Alabama is currently one of ten state participants assigned by the Social Security Administration to apply the SDM modification "prototype" test. 73 Fed. Reg. 12,945 (Mar. 7, 2008). Because the Administration allows the SDM to certify the State Agency's disability determination without the signature of a medical consultant, the ALJ did not err in considering his opinion. Thus, as it was unnecessary for a medical consultant to certify the SDM's determination, the court finds the ALJ's RFC determination of Plaintiff is supported by substantial evidence.

      b.      **The ALJ Did Not Fail to Develop the Record By Declining to Request Additional Medical Source Opinions.**

Plaintiff next argues that because the ALJ failed to obtain an additional medical source opinion and thus develop the record, the ALJ's decision was not based on substantial evidence. (Pl.'s Mem. 8-9). Plaintiff references certain provisions of 20 C.F.R. § 404.1519a, which read as follows: "[w]e *may* purchase a consultative examination . . . when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim. Some examples of

when we *might* purchase a consultative examination . . . include but are not limited to: [t]he additional evidence needed is not contained in the records of your medical sources . . . [t]here is an indication of a change in your condition that is likely to affect your ability to work, but the current severity of your impairment is not established." 20 C.F.R. § 404.1519a(b)(1)&(4) (emphasis added).

As Plaintiff correctly notes, the ALJ has a duty to develop a full and fair record, and "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *See Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). The threshold consideration for the court on this inquiry involves a determination of when an ALJ needs an additional medical source opinion in order to make an informed decision. An ALJ "has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 493 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *see also* 20 C.F.R. § 404.1519a (stating the Commissioner will consider "not only existing medical reports, but also the disability interview form containing [claimant's] allegations as well as other pertinent evidence."). Although Plaintiff correctly notes that a consultative examination is normally required if there is a need to resolve some issue of insufficiency in the evidence, that principle is inapposite here because there is clearly sufficient evidence to make a determination in this case.

Indeed, as the following examples indicate, the record contains more than enough evidence, both medical and nonmedical, for the ALJ to have made an informed decision. With regard to Plaintiff's medical evidence, the inpatient records related to his cardiac catheterization

are well documented. (Tr. 262-93). Plaintiff underwent successful surgery on August 24, 2009 and his subsequent recuperation was recorded as "uneventful." (Tr. 263). Despite having chest pain prior to the surgery, Plaintiff did not report any shortness of breath and Dr. Ridner noted Plaintiff was not suffering from asthma. (Tr. 270, 282). Plaintiff's only other medical records are from two hospital visits in November 2009, when Plaintiff complained of right groin pain at his catheter site. (Tr. 294-306). Neither of his visits revealed any adverse symptoms from his surgery two months earlier. In fact, Dr. Ridner reported Plaintiff "denie[d] chest pain or discomfort, racing/skipping heart beats, dizziness, passing out, swelling of hands or feet, and weight gain[,]" and that a physical examination showed Plaintiff had a regular heart beat and pulse. (Tr. 297-98). No record is documented of Plaintiff seeking treatment for his alleged disability after November 2009. Further, the state agency Physical RFC Assessment noted Plaintiff's statements regarding his symptoms and limitations are "found to be partially credible." (Tr. 155).

The non-medical evidence in the record also provides substantial evidence for the ALJ's RFC determination. In his disability Function Report, Plaintiff stated he takes his dog out for exercise, cooks his own meals, does chores around his house, and drives himself to run errands. (Tr. 220-27). Further, at the ALJ hearing, Plaintiff testified he cleans his house with some breaks for fatigue, cooks for himself, does his own laundry, drives about three to four times a week, and even drove himself from Alabama to Texas during his period of alleged disability. (Tr. 134-39). Plaintiff also testified that his level of pain averages a five or six out of ten. (Tr. 134-35). Additionally, the court finds no evidence of any ongoing medication or other method Plaintiff has used to relieve his pain during his alleged period of disability.

Ultimately, it is Plaintiff who bears the burden of proving he is disabled and is "responsible for producing evidence in support of that claim." *Ellison v. Barnhart*, F.3d 1272, 1276 (11th Cir. 2003). *See also* 20 C.F.R. § 404.1512. Here, Plaintiff had the opportunity to submit further evidence in support of his disability claim, but failed to do so. The ALJ is not required to "develop the record" by creating evidence of Plaintiff's disability for him.

Other than the medical records surrounding Plaintiff's cardiac catheterization, Plaintiff has had no ongoing treatment for his heart condition, and no treatment at all for his asthma, arthritis, and cholesterol. Based on this information, the court finds (1) there is sufficient evidence in the record to support the ALJ's finding, and (2) he made an informed decision regarding Plaintiff's RFC without requesting an additional consultative examination. While Plaintiff is correct that the ALJ *may* purchase a consultative examination if the current severity of a claimant's impairment has not been established, it is not necessary for the ALJ to do so if there is sufficient record evidence for the ALJ to make an informed decision. Here, there is. Therefore, as the ALJ was not required to request a consultative examination, the ALJ did not fail in his duty to develop the record.

    **c.**    **Plaintiff's RFC Limits Him to a Reduced Range of Light Work, and Not Sedentary Work.**

Plaintiff contends that because the ALJ's RFC determination limits his postural functions to "occasional," his RFC "would better comport with a sedentary RFC at best." (Pl.'s Mem. 10). Plaintiff argues that because his RFC better comports with sedentary work, the ALJ should have found a disability under Medical Vocational Rule 201.10. (Pl.'s Mem. 10).

What Plaintiff appears to really be seeking is an independent determination by this court that the ALJ's findings lead to the conclusion that his RFC actually limits him to sedentary work. First, as discussed below, Plaintiff's argument that the ALJ's findings regarding his ability to

perform more than sedentary work are not supported by substantial evidence is without merit. Second, to the extent Plaintiff asks this court to make its own findings regarding Plaintiff's RFC, Plaintiff is mistaken about this court's scope of review. This court may not decide facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Instead, this court is limited to review whether substantial evidence supports the Commissioner's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. 1383(c)(3); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Therefore, this court will evaluate only whether the ALJ's RFC determination limiting Plaintiff to a reduced range of light work is supported by substantial evidence.

The Regulations define light work as that which involves "lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighting up to ten pounds . . . requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The ALJ found Plaintiff is capable of performing light work, allowing him to "lift, carry, push, or pull twenty pounds occasionally and ten pounds frequently; stand or walk six hours in an eight-hour workday; and sit six hours in an eight-hour workday . . . except with the following limitations: never climb ladder/rope/scaffolds; occasionally climb ramp/stairs; frequently balance, stoop, knell, crouch, and crawl; and avoid concentrated exposure to temperature extremes and hazards." (Tr. 35). While Plaintiff is correct that an RFC reflective of sedentary work would require a finding of disability under Medical Vocational Rule 201.10, the ALJ's findings clearly exceed the sedentary level and appear to fall closer to the Regulation's definition for light work. *See* 20 C.F.R. §§ 404.1545(a)(1); 404.1567(b)-(c). Further, Plaintiff misstates the ALJ's determination − the ALJ did not limit "all postural functions" to occasional. (Pl.'s Mem. 10). The ALJ found

Plaintiff able to "*frequently* balance, stoop, kneel, crouch, and crawl." (Tr. 35) (emphasis added).

Still, because Plaintiff's RFC comprises a reduced range of light work, exclusive reliance on the grids is inappropriate. In such cases, the Commissioner's preferred method of demonstrating that a claimant can perform other jobs is through the testimony of a vocational expert. In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citations omitted); *Watson v. Astrue,* 276 F. App'x 953, 956-57 (11th Cir. 2010); SSR 83-12. The ALJ relied properly on the VE's testimony that Plaintiff could perform a significant number of jobs in the national economy based on his ability to perform a reduced range of light work. Plaintiff states the ALJ did not reference specifically the issue of transferability of skills in his hypothetical to the VE. (Pl.'s Mem. 10). Plaintiff cites no supporting authority, and the court has found no case law or regulation that requires the issue of transferability of skills to be outlined in the ALJ's hypothetical. Rather, case law dictates simply that the ALJ's hypothetical must list all of a claimant's impairments, and here the ALJ did that. *See Jones*, 190 F.3d at 1229; *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1999). Because the ALJ posed a comprehensive hypothetical to the VE, the court finds the VE's testimony is substantial evidence that supports the ALJ's determination that Plaintiff can perform a significant number of jobs in the national economy.

## VI.     Conclusion

The court concludes that the ALJ's determination that Plaintiff Franklin Jefferson Stogner is not disabled is supported by substantial evidence and proper legal standards were

applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** on July 22, 2013.

_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE